IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ZHONG ZHUANG,

    Plaintiff,                  15cv0481
                                   **ELECTRONICALLY FILED**

    v.

THE HANOVER INSURANCE COMPANY,

    Defendant.

**<u>MEMORANDUM ORDER OF COURT RE: PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT (DOC. NOS. 16 AND 18)</u>**

**I.    Introduction**

This case centers on an insurance coverage dispute brought by Zhong Zhuang ("Plaintiff") against The Hanover Insurance Company ("Hanover")("Defendant"), which was originally filed at No. GD 15-004300, in the Civil Division of the Court of Common Pleas of Allegheny County. Doc. No. 1-1. In essence, Plaintiff contends that Hanover violated its obligations pursuant to the applicable Lawyers Professional Liability Insurance Policy by failing to compensate Plaintiff for a $904,119.18 default judgment obtained by Plaintiff against Erik Sobkiewicz, an attorney, formerly of Campbell & Levine. Id.

On April 10, 2015, Hanover filed a Notice of Removal from the Court of Common Pleas of Allegheny County, pursuant to 28 U.S.C. § 1441(a). Doc. No. 1-1. Jurisdiction in this forum is premised on the diversity of the Parties and an amount in controversy that exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332.

Plaintiff, in his Complaint, advances the following three causes of action against Hanover: (1) breach of contract; (2) breach of third-party beneficiary contract; and (3) bad faith pursuant to 42 Pa.C.S.A. § 8371. Doc. No. 1-1. The Parties stipulate that Count II is moot and

have separately moved this Court to enter judgment in their favor as to each of the remaining claims. Doc. Nos. 15, ¶ 58, 16 and 18. This matter is ripe and ready for disposition. Doc. Nos. 14-23. After careful consideration of the pending Motions, summary judgment will be entered in Plaintiff's favor as to Count I-breach of contract and in Defendant's favor as to Count III-bad faith, for the foregoing reasons.

## II.   Standard of Review

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010).

A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). Disputes must be both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning there is sufficient evidence supporting the claimed factual dispute "to require a jury or judge to resolve the parties' differing versions of the truth at trial." *In re Lemington Home for Aged*, 659 F.3d 282, 290 (3d Cir. 2011).

A party moving for summary judgment has the initial burden of supporting its assertion that fact(s) cannot be genuinely disputed by citing to particular parts of materials in the record – *i.e.*, depositions, documents, affidavits, stipulations, or other materials – or by showing that: (1) the materials cited by the non-moving party do not establish the presence of a genuine dispute, or (2) that the non-moving party cannot produce admissible evidence to support its fact(s). Fed. R. Civ. P. 56(c)(1). The moving party may discharge its burden by "pointing out to the district court" the "absence of evidence to support the nonmoving party's case" when the

2

non-moving party bears the ultimate burden of proof for the claim in question. *Conoshenti v. Public Service Elec. & Gas Co*, 364 F.3d 135, 140 (3d Cir. 2004), quoting *Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 192 n. 2 (3d Cir. 2001), quoting *Celotex*, 477 U.S. 317, 325 (1986).

Conversely, in order to defeat a motion for summary judgment, the non-moving party must support its assertion that fact(s) are genuinely disputed by citing to particular parts of materials in the record, or by showing that: (1) the materials cited by the moving party do not establish the absence of a genuine dispute, or (2) the moving party cannot produce admissible evidence to support its fact(s). Fed. R. Civ. P. 56(c)(1). When determining whether there are any genuine issues of material fact, all inferences should be drawn in favor of the non-moving party. *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

In reviewing a motion for summary judgment, the Court does not make credibility determinations, and summary judgment is "inappropriate when a case will turn on credibility determinations." *El v. Southeastern Pennsylvania Transp. Authority*, 479 F.3d 232 (3d Cir. 2007), citing *Anderson*, 477 U.S. at 255.

In the instant case, the parties have filed cross-motions for summary judgment. It is well established in this Circuit that the filing of contradictory motions for summary judgment "does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Lawrence v. City of Philadelphia, Pa.*, 527 F.3d 299, 310 (3d Cir. 2008), quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).

### III. Statement of Facts

The following material facts are undisputed and have been derived from the Parties' Joint Concise Statement of Material Facts (Doc. No. 15):

Hanover issued a Lawyers Professional Liability Insurance Policy to the law firm of Campbell & Levine, LLC ("Campbell & Levine"). Doc. No. 15, ¶ 4. The policy was effective from December 4, 2011 through December 4, 2012, and included a $5,000,000.00 per claim and aggregate limit of liability. Id. at ¶ 5. During the relevant period Erik, Sobkiewicz ("Sobkiewicz") was a licensed attorney and partner in the firm. Id. at ¶ 6. Sobkiewicz was an "insured" under the policy. Id. at ¶ 7.

In early March of 2012, Plaintiff retained Jesse Chen ("Chen") a licensed attorney, in regards to an investment opportunity Plaintiff was pursuing involving Highlands Mall in Natrona Heights ("Highlands Mall Deal"). Id. at ¶¶ 8-9. Chen sought assistance in reviewing the Highlands Mall Deal from a more experienced attorney, in this case, Sobkiewicz, who agreed to review the deal. Id. at ¶ 11. On March 4, 2012, Plaintiff, Chen, and Sobkiewicz met to review the paperwork and terms for the Highlands Mall Deal. Id. at ¶ 12.

The following day, Sobkiewicz contacted Chen and informed him that he wished to offer Plaintiff an investment opportunity involving a company called RAG East, LP ("RAG East"), which owned a property in Philadelphia. Id. at ¶ 14. Sobkiewicz was the owner of RAG East; the prospectus included a proposal that RAG East and another entity Sobkiewicz controlled borrow $600,000.00 as an interest-only loan to fund costs associated with renovating a property in Philadelphia. Id. at ¶¶ 18-19. Chen informed Sobkiewicz that it was not appropriate to present the proposal to Plaintiff until after he had made a decision on the Highlands Mall Deal. Id. at ¶ 15. Sobkiewicz followed-up with Chen the next day by emailing Chen a prospectus for the RAG East investment proposal. Id. at ¶ 16.

Later the same day (March 5, 2012), Chen forwarded the prospectus to Plaintiff via email. Id. at ¶ 21. Plaintiff agreed to the $600,000.00 loan; he did not discuss the prospectus with Sobkiewicz before doing so. Id. at ¶¶ 22-23. The only contact between Plaintiff and Sobkiewicz was one instance when Sobkiewicz hand-delivered documents to Plaintiff at a local gas station. Id. at ¶ 28. Sobkiewicz prepared the documents for the loan, including the mortgage and security agreements, and submitted these documents to Chen for review and comment. Id. at ¶ 24. Plaintiff did not pay Sobkiewicz for preparing these documents, but believed that Sobkiewicz represented him in the transaction. Id. at ¶ 32. Plaintiff was aware that Sobkiewicz had a personal interest in the transaction. Id. at ¶ 33.

Chen was retained by Plaintiff to review and advise Plaintiff on the deal with Sobkiewicz and Plaintiff reviewed the documents with Chen and another unnamed attorney. Id. at ¶ 25. Chen testified that Sobkiewicz was to obtain title insurance for Plaintiff's benefit. Id. at ¶ 30. The loan documents were executed on March 8, 2012. Id. at ¶ 26.

Sobkiewicz resigned from Campbell & Levine on March 28, 2012. Id. at ¶ 41.

On May 2, 2012, Plaintiff filed an involuntary petition for bankruptcy relief under Chapter 7 of the Bankruptcy Code against RAG East. Id. at ¶ 37. On March 4, 2013, the Bankruptcy Court for the Western District of Pennsylvania entered a Memorandum Opinion and Order on cross-motions between Plaintiff and one of the parties who sought an entry of an order confirming that it held a first-priority lien for the property in which Plaintiff invested. Id. at ¶¶ 37, 39.

On November 5, 2012, a partner at Campbell & Levine notified Hanover that Plaintiff may make a claim related to Sobkiewicz's actions. Id. at ¶ 42. On November 19, 2012, Hanover issued a written reservation of rights to the firm. Id. at ¶ 43. Two days later, Plaintiff

5

commenced a malpractice claim against Chen and Sobkiewicz, which Hanover became aware of in early January 2014, when a partner at Campbell & Levine emailed the insurer a copy of Plaintiff's Complaint. Id. at ¶¶ 44-45, 47.

On April 30, 2014, Hanover notified the firm that it would not provide a legal defense or indemnification to Sobkiewicz for Plaintiff's claim or lawsuit. Id. at ¶ 49. That same day, default judgment was entered against Sobkiewicz. Id. at ¶ 50. Judgment was entered against Sobkiewicz in October of 2014 in the amount of $904,119.18, which continues to accrue interest at the rate provided for in the Note between Plaintiff and RAG East. Id. at ¶ 51. Plaintiff settled his claim against Chen, which, along with other credits owed to Plaintiff, reduces the amount due and owing on the judgment against Sobkiewicz to $800,984.49 (interest continues to accrue on this amount). Id. at ¶ 53.

Sobkiewicz assigned any rights he had under the Policy with Hanover to Plaintiff. Id. at ¶ 54. Another third-party involved in the financing of the property with Sobkiewicz made a malpractice claim against Campbell & Levine, who had provided legal services to the company for several years prior to the transaction at issue. Id. at ¶ 56. This claim was settled in December of 2012 with Hanover's involvement. Id. at ¶ 56.

IV. Discussion

   A. Count I-Breach of Contract

      *i. Sobkiewicz's Actions are Covered by the Policy because He Rendered Professional Services to Plaintiff*

Although the facts of this case are not in dispute, the Parties fundamentally disagree about the implications of the material facts, specifically, whether Sobkiewicz's interactions with Plaintiff in connection with the failed loan are covered under the insurance Policy. This is the

threshold issue in this matter because a determination that Sobkiewicz's actions do not fall within the Policy necessitates an entry of summary judgment wholly in Hanover's favor.

The Policy provides that "[w]e will pay on your behalf those sums which you become legally obligated to pay as damages and claim expenses because of any claim made against you arising from a wrongful act in rendering of or failure to render professional services . . . ." Doc. No. 15-1. Professional services is defined as "[s]ervices you render as a lawyer, mediator, arbitrator, notary public, administrator, conservator, receiver, executor, guardian, trustee, or in any similar fiduciary capacity, but only if the services you render are those ordinarily performed by a lawyer." Id. at pg. 11.

Therefore, the Court must determine whether Sobkiewicz's actions in connection with the RAG East deal were services ordinarily performed by a lawyer. In essence, Sobkiewicz's involvement with Plaintiff was as a legal counselor. Sobkiewicz was first introduced to Plaintiff through a legal referral and was tasked with reviewing the documentation relating to a potential investment deal. Through this existing legal relationship, Sobkiewicz was able to present another investment deal to Plaintiff, through Plaintiff's attorney. Sobkiewicz's subsequent proposal flows from the legal services he provided to Plaintiff by advising Plaintiff on the Highlands Mall Deal and is so inter-related both in substance and in time to the first undisputedly legal meeting between Chen, Plaintiff, and Sobkiewicz (one day) that Sobkiewicz's services in connection with the subsequent RAG deal must be construed as part of a continuing legal relationship, rather than two distinct interactions. Therefore, a reasonable person would construe Sobkiewicz's proposal and subsequent dealings with Plaintiff in connection with the RAG East deal as that of a legal advisor providing continuing legal advice and counseling, which are actions "normally performed by a lawyer."

Defendant points to the lack of formalized mechanisms between Plaintiff and Sobkiewicz, for example that there was no written agreement for legal services between them, to argue that Sobkiewicz's actions are not professional services.  However, as reflected in the rules of ethics, an attorney can owe ethical and legal duties to an individual, even in the absence of a formalized agreement.  See Model Rules of Professional Conduct, Rule 1.18: Duties to Prospective Clients ("(a) A person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.  (b) Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information . . . .").  Here, no reasonable jury could find that Sobkiewicz was not acting as an attorney when he presented the RAG East deal.  Similarly, the fact that no other attorneys from Sobkiewicz's former law firm worked on Plaintiff's transaction, Plaintiff was not billed for Sobkiewicz's services, and other facts raised by Defendant are not material to this issue, because these factors do not negate that Sobkiewicz was serving as a lawyer in his interactions with Plaintiff as to both the Highlands Mall Deal and the subsequent RAG East loan.

In sum, the undisputed evidence supports a finding that Sobkiewicz was acting as an attorney throughout his dealings with Plaintiff, including drafting the necessary documents for Plaintiff's RAG East loan, and he was providing services "normally performed by a lawyer" when he failed to obtain title insurance for the loan or advise Plaintiff or Chen to obtain the necessary protection.  As such, Sobkiewicz's actions fall within the terms of the Policy.

*ii. Policy Exclusions are Not Applicable*

Defendant contends that the following provisions provide either that services provided by Sobkiewicz were not "professional services" covered by the policy or the professional services provided are excluded from coverage:

- professional services are not those "in relation to or as the promoter, seller or solicitor of securities, real estate, or other investment" ((D) Definitions "Professional Services")

exclusions:

- where an insured holds an interest of more than 15% of a privately owned entity as a partner, member, principal or stockholder, or directly controls, operates, or manages the entity ((E)(4)(a) and (c)); and
- claims based on, arising out of, or relating directly or indirectly to, any insured committing any intentional, dishonest, criminal, malicious or fraudulent act or omission or gaining any profit, remuneration or advantage to which such insured was not legally entitled ((E)(1)(a)-(b))

Hanover also contends that Sobkiewicz failed to comply with the Policy's notice requirement. Doc. No. 19, pgs. 6-12. The Court will address these possible impediments to Policy coverage over Plaintiff's objections because collateral estoppel does not apply because the issues in Plaintiff's malpractice action and the present case are not identical.

The Court finds that none of the Policy exclusions cited by Defendant bar application of the Policy's coverage. First, the core allegation underlying Plaintiff's malpractice claim is that Sobkiewicz failed to advise him to obtain title insurance and failed to obtain the title insurance. These allegations are not those of fraud, or self-interest, but rather, a more traditional form of malpractice. Although this insufficient advice was tangential to a real estate deal, the malpractice is not in the transaction itself, *i.e.*, Sobkiewicz was acting as an attorney to Plaintiff, not as a "promoter, seller, or solicitor" of real estate. Application of the exclusion to

9

professional services would ignore the spirit of malpractice insurance and would serve to exclude almost any claim by a client who sought legal advice from a lawyer as to real estate transactions. Plaintiff's allegations of malpractice would be the same whether or not Sobkiewicz had any interest in the real estate in Philadelphia and the Court finds that the exclusion for situations in which an attorney has an interest in excess of 15% also does not apply. In other words, Sobkiewicz's professional legal services would constitute legal malpractice because he failed to obtain title insurance for Plaintiff or advise him to do so himself regardless of any of the facts identified by Hanover such as Sobkiewicz's personal interest in the deal *etc.* The conduct at issue is a basic failure to provide sufficient legal advice and should not be excluded from coverage based upon other extraneous factors.

As to Defendant's argument that the Policy does not apply because Sobkiewicz pled guilty to criminal charges and the Bankruptcy Court outlined that he obtained his loan based on false representations, the legal malpractice claim and judgment at issue did not contain allegations of fraud or other disqualifying intent; Sobkiewicz's subsequent criminal charges are of no consequence to Plaintiff's malpractice action or the applicable Policy.

Finally, Hanover had sufficient notice of Plaintiff's malpractice claim against Chen and Sobkiewicz. It is undisputed that Hanover was aware of Plaintiff's malpractice claim against Sobkiewicz shortly after the claim was filed. Doc. No. 15, ¶ 45. Defendant alternatively argues that Sobkiewicz was not acting as a lawyer and then impunes strict notice requirements on him to inform Hanover of a lawsuit against him when he had already resigned from Campbell & Levine. The Court finds that it is sufficient that Hanover was informed of the commencement of Plaintiff's lawsuit by email from Campbell & Levine in January of 2014. Notice need not have been directly given by the already resigned Sobkiewicz.

Therefore, because Sobkiewicz provided professional services to Plaintiff and no exclusion to the Policy applies, summary judgment will be entered in Plaintiff's favor as to Count I-Breach of Contract.

### I. Count III-Bad Faith pursuant to Pa.C.S.A. § 8371

Both Parties move this Court to grant summary judgment in their favor as to Count III of Plaintiff's Complaint, which alleges a cause of action for bad faith pursuant to Pa.C.S.A. § 8371. Bad faith is defined as "any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent." *Terletsky v. Prudential Property and Casualty Ins. Co.*, 649 A.2d 680, 688 (Pa. 1984). Mere negligence or bad judgment is not bad faith. *Id.* Plaintiff must prove the following two elements to establish that Defendant acted in bad faith: (1) that Hanover "did not have a reasonable basis for denying benefits under the policy;" and (2) Hanover "knew of or recklessly disregarded its lack of reasonable basis in denying the claim." *Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005).

Here, Plaintiff contends that Hanover was required to provide a defense and indemnification with respect to Plaintiff's malpractice claim against Sobkiewicz and had a duty to exercise good faith and fair dealing, which was breached when Hanover declined to provide a defense and indemnification in respect to Plaintiff's claim. Doc. No. 1-1, ¶¶ 50-53. A review of the Parties' Undisputed Material Facts (Doc. No. 15) reveals the following support for Plaintiff's bad faith claim:

- On November 5, 2012, David B. Salzman of Campbell & Levine notified Hanover of "a possible claim that may be made [by Zhuang] related to the actions of" Sobkiewicz (Doc. No. 15, ¶ 42);
- On November 19, 2012, Hanover issued a written reservation of rights to the firm concerning the potential claim (Id. at ¶ 43);
- Plaintiff commended a legal malpractice suit against Chen and Sobkiewicz by filing a writ of summons on November 21, 2013 (Id. at ¶ 44);

11

- Campbell & Levine emailed a copy of this Complaint to Hanover on January 7, 2014 (Id. at ¶ 45);
- Hanover notified Campbell & Levine via letter dated April 30, 2014, that it would not provide a legal defense or indemnification to Sobkiewicz for Plaintiff's claim (Id. at ¶ 49);
- Another party involved in Sobkiewicz's financing of the property, a long-time client of Campbell & Levine, made a legal malpractice claim against the firm (Id. at ¶ 55); and
- Hanover participated in the settlement of this claim in December of 2014 (Id. at ¶ 56)

These facts, even when seen in the light most favorable to Plaintiff, do not amount to a finding of bad faith because, at most, Plaintiff has established that Hanover was aware of the malpractice claim, the malpractice actions were covered by the policy, but Hanover did not provide coverage as they had done in another case. The Court's finding that Sobkiewicz's actions are covered by the Policy does not necessarily imply that Hanover's position that the Policy does not apply amounts to bad faith. Otherwise, essentially all situations where an insured's claims were denied by an insurer may constitute bad faith; there must be something more to recover for bad faith.

Hanover's denial may be said to have been incorrect or even negligent, but there are no facts from which the Court can find, let alone find by clear and convincing evidence, that Hanover acted with improper purposes. As to Plaintiff's argument that Hanover acted in bad faith because it paid other claims related to the investment deal, but not his, accepting Plaintiff's argument would imply that an insurer commits bad faith where the company pays some claims related to a transaction, but not others. An insurance company is permitted to investigate each claim independently and is not obliged to pay all claims that are submitted. Plaintiff has not set forth any evidence that the claim paid by Hanover was related to less egregious behavior on Sobkiewicz's part or any other factor that would obligate Hanover to pay both claims or be found

to have acted in bad faith. If anything, the fact that the claim covered by Hanover was to a long-term client of the insured law firm negates Plaintiff's bad faith claim because this factor could reasonably be a basis for Hanover to believe that similar actions by Sobkiewicz with respect to an existing long-term client were covered, while a claim by an individual who did not have an existing relationship with the firm was arguably not covered by the Policy. The Court also notes that the third-party claim was settled in December of 2012, approximately a year prior to Plaintiff's malpractice claims against Chen and Sobkiewicz, which is another factor that differentiates the malpractice claims.

Therefore, because there is not any genuine dispute as to any material fact in this respect, and there is insufficient evidence to find Hanover acted in bad faith, summary judgment will be entered in Defendant's favor as to Count III-bad faith.

V. Order

AND NOW, this 3rd day of September, 2015, IT IS HEREBY ORDERED THAT:

1. Plaintiff's Motion for Summary Judgment (Doc. 16) is **GRANTED IN PART AND DENIED IN PART**;
2. Defendant Hanover's Motion for Summary Judgment (Doc. No. 18) is **GRANTED IN PART AND DENIED IN PART**;
3. Summary Judgment is entered **in favor of Plaintiff as to Count I-Breach of Contract**;
4. Count II-Breach of Third-Party Beneficiary Contract is **DISMISSED AS MOOT**;
5. Summary Judgment is entered **in favor of Defendant as to Count III-Bad Faith Pursuant to 42 Pa.C.S.A. § 8371**;

6. Judgment is entered in favor of Plaintiff and against Defendant as to Count I in the amount of $804,798.82 as of August 14, 2015, which amount should accrue at a per diem rate of $293.41; and

7. The Clerk of Court shall mark this **CASE CLOSED**.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc: All Registered ECF Counsel and Parties